14 CV 9763

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NICHOLAS MERRILL,

Plaintiff,

v.

ERIC HOLDER, Jr., in his official capacity as
Attorney General of the United States, and
JAMES B. COMEY, in his official capacity as
Director of the Federal Bureau of Investigation,

Defendants.

14 CIV.



RECEIVED
DEC 11 2014
U.S.D.C. S.D. N.Y.
CASHIERS

**COMPLAINT FOR INJUNCTIVE RELIEF**

**INTRODUCTION**

1.      Plaintiff Nicholas Merrill brings this action to challenge an ongoing prior restraint

on his speech first imposed upon him by the Federal Bureau of Investigation ("FBI") more than a

decade ago.  In February 2004, the FBI issued a National Security Letter (the "2004 NSL") to

Mr. Merrill, demanding business records concerning a customer of the Internet service company

Mr. Merrill ran at that time.  The letter also imposed a broad legal restraint upon Mr. Merrill

against any disclosure of the FBI request to anyone, under gag and secrecy provisions of 18

U.S.C. §§ 2709 and 3511 (collectively, "the NSL statute").

2.      In subsequent court challenges by Mr. Merrill, the restraint on his speech was

narrowed, but upheld in part.  However, the court decisions upholding portions of the gag order

did not contemplate a permanent ban on Mr. Merrill's speech that would continue long after the

FBI investigation that prompted the 2004 NSL had ended.

3.      More than ten years later, however, Mr. Merrill remains prohibited from speaking about important aspects of the FBI's 2004 demand for his documents.  Specifically, he remains prohibited from speaking about nearly everything contained in an attachment to the 2004 NSL (the "Attachment").

4.      The Attachment identifies the categories of records the FBI ordered Mr. Merrill to produce and reveals what the FBI considers to constitute "electronic communications transactional records" subject to compelled disclosure in response to an NSL.  The FBI may issue NSLs unilaterally, without any prior approval by a judge.  The FBI's understanding of the scope of its authority to obtain information on individuals using NSLs, as revealed through the Attachment, is therefore a matter of significant public interest.  Yet Mr. Merrill remains prohibited from discussing it.

5.      In April 2014, Mr. Merrill requested that the government withdraw voluntarily the ongoing limits on his free speech in light of the passage of time.  The government responded by narrowing the scope of the gag order, permitting Mr. Merrill to disclose the target of the FBI's 2004 NSL, along with other aspects of his experience as an NSL recipient.  However, despite the fact that the FBI investigation related to the 2004 NSL is evidently closed, the government continues to forbid Mr. Merrill from discussing any additional information contained in the Attachment, and has signaled its intention to maintain this ban on his speech indefinitely.

6.      Mr. Merrill brings this action to end this continued, indefinite and effectively permanent prohibition on his constitutional freedom of speech.

## JURISDICTION AND VENUE

7.      This case arises under the United States Constitution and the laws of the United States and presents a federal question under Article III of the United States Constitution and 28

U.S.C. § 1331. The Court has authority to grant declaratory and injunctive relief pursuant to 18 U.S.C. § 3511(b), the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*, and the All Writs Act, 28 U.S.C. § 1651. The Court has authority to award costs and attorneys' fees under 28 U.S.C. § 2412.

8.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims—namely, the issuance of the NSL and initial imposition of the gag order, all prior litigation over the lawfulness of the gag on Mr. Merrill's speech, and the court orders that specify the scope of the ongoing gag—occurred in Manhattan, the residence of both Mr. Merrill and his company when the FBI served the 2004 NSL.

## PARTIES

9.      Plaintiff Nicholas Merrill was served with the 2004 NSL and subjected to the ensuing gag order as the owner and operator of Calyx Internet Access, an Internet access and consulting business that was incorporated and located in New York, New York. He remains subject to portions of that gag order to this day.   Plaintiff Merrill currently resides in Brooklyn, New York.

10.      Defendant Attorney General Eric Holder heads the United States Department of Justice ("DOJ"), which is the agency of the United States government responsible for enforcing federal criminal laws and conducting domestic intelligence investigations. Defendant Holder has ultimate authority for supervising all of the DOJ's operations and functions. Defendant Holder has statutory authority to lift the gag order on Mr. Merrill. The DOJ includes the FBI, the agency authorized to use the law challenged in this case. Defendant Holder is sued in his official capacity.

11.     Defendant James B. Comey is the Director of the FBI and is responsible for supervising all of that agency's operations. The FBI is the agency authorized to use the law challenged in this case. Defendant Comey has statutory authority to lift the gag order on Mr. Merrill. He is sued in his official capacity.

**BACKGROUND**

*The 2004 NSL*

12.     In 2004, Mr. Merrill was the owner and operator of Calyx Internet Access, which provided a number of Internet-related services for its clients. Calyx Internet Access provided space on the Internet where clients could maintain their own websites and store electronic files. It provided clients with e-mail accounts and, in some cases, with the ability to access the Internet. As of August 2004, plaintiff Merrill ceased operating Calyx Internet Access Corporation, and the company is now defunct.

13.     On or about February 4, 2004, an FBI agent delivered an NSL to Mr. Merrill at the offices of Calyx Internet Access in Manhattan.

14.     The 2004 NSL stated that Mr. Merrill is "hereby directed to provide the [FBI] the names, addresses, lengths of service and electronic communication transactional records" pertaining to one of his clients.

15.     The Attachment identified the specific types of records demanded by the FBI and elaborated upon what types of records count as "electronic communication transactional records," a phrase that is not defined by statute or regulation.

16.     The 2004 NSL included a certification that "the information sought is relevant to an authorized investigation to protect against international terrorism or clandestine intelligence activities."

17.     The 2004 NSL stated, "[y]ou are further advised that Title 18, U.S.C., Section 2709(c), prohibits any officer, employee or agent of yours from disclosing to any person that the FBI has sought or obtained access to information or records under these provisions."

18.     The letter also required that Mr. Merrill, "provide records responsive to this request personally to a representative . . . of the FBI. . . . Due to security considerations, you should neither send the records through the mail nor disclose the substance of this request in any telephone conversation."

*Previous Litigation*

19.     Mr. Merrill has previously challenged the gag order at issue here.  His first challenge was initiated as a "John Doe" action in 2004 and included multiple appeals; it ultimately ended in 2010 with a settlement agreement permitting him to identify himself as the recipient of the 2004 NSL and plaintiff in the lawsuit.  The relevant details of the litigation are as follows.

20.     In April 2004, Mr. Merrill—along with Calyx Internet Access, the American Civil Liberties Union ("ACLU"), and the American Civil Liberties Union Foundation ("ACLUF") (collectively, the "2004 Plaintiffs")—filed suit challenging the constitutionality of both the substantive authority conferred by the NSL statute to compel records, and the nondisclosure provisions of the law, as then codified in 18 U.S.C. § 2709.  Due to the gag imposed by the 2004 NSL, Mr. Merrill and his company could not be identified by name in publicly filed pleadings or any other public communications regarding the case.

21.     In September 2004, the District Court invalidated the statute on the grounds that it violated the First Amendment.  *Doe v. Ashcroft*, 334 F.Supp.2d 471 (S.D.N.Y. 2004).

22.     While the government's appeal was pending before the Second Circuit, Congress enacted the USA PATRIOT Improvement and Reauthorization Act of 2005 and the USA

PATRIOT Act Additional Reauthorizing Amendments Act of 2006, substantially amending the challenged law. In particular, Congress permitted NSL recipients to seek judicial review of the NSL nondisclosure provision, codified at 18 U.S.C. § 3511(b). The Second Circuit remanded to the District Court for further findings. *Doe v. Gonzales*, 449 F.3d 415 (2d Cir. 2006).

23.     On remand, the District Court held that the statutes' gag provisions remained unconstitutional despite the amendments. *Doe v. Gonzales*, 500 F. Supp. 2d 379, 386 (S.D.N.Y. 2007).

24.     On appeal, the Second Circuit held that the gag provisions as amended and codified in 18 U.S.C. § 2709 and § 3511 violated the First Amendment, but it adopted a saving construction to remedy that violation. *John Doe, Inc. v. Mukasey*, 549 F.3d 861, 876-83 (2d Cir. 2008). Specifically, the Second Circuit construed the statutes to permit a nondisclosure order only if the FBI could show "good reason to believe that disclosure may result in . . . a harm related to an authorized investigation to protect against international terrorism or clandestine intelligence activities." *Id.* at 881 (internal quotations omitted).

25.     On remand, the District Court reviewed an *ex parte*, *in camera* filing from the government consisting of an FBI agent's classified declaration. *Doe v. Holder*, 640 F. Supp. 2d 517 (S.D.N.Y. 2009). The District Court accepted the declaration as describing "an ongoing authorized investigation to protect against international terrorism or clandestine intelligence activities" and found that "disclosure of the Declaration may result in an enumerated harm." *Id.* at 518.

26.     Mr. Merrill filed a Motion to Reconsider. On March 18, 2010, the District Court filed an order requiring the government to release publicly a less-redacted version of the NSL Attachment holding that "(1) material within the scope of information that the NSL statute

identifies as permissible for the FBI to obtain through use of NSLs, and (2) material that the FBI

has publicly acknowledged it has previously requested by means of NSLs" should be disclosed,

because the Court was "not persuaded that disclosure of these two categories of information [in

the Attachment] would raise a substantial risk that any of the statutorily enumerated harms would

occur." *Doe v. Holder*, 703 F.Supp.2d 313, 316 (S.D.N.Y. 2010). However, the majority of the

NSL remained redacted, including the target of the NSL, the bulk of the Attachment describing

the kinds of records sought, and even Mr. Merrill's identity as the NSL's recipient.

27.     After the ruling, the parties reached a settlement before appeal that allowed Mr.

Merrill to reveal himself as both the recipient of the NSL and the plaintiff in the lawsuit,

although the remainder of the gag remained in place.  The agreement did not contemplate a

permanent injunction and specifically preserved Mr. Merrill's right to annual review of the gag

order under 18 U.S.C. § 3511(b).  The terms of the agreement were set forth in a Stipulation and

Order of Dismissal entered by the District Court on July 30, 2010.

28.     Following this 2010 settlement, the government never contacted Mr. Merrill or

the Court to assert a continuing necessity—or lack thereof—of the gag order.

29.     In February 2014—nearly ten full years after the gag's issuance—Mr. Merrill

engaged legal counsel to help remove the ongoing restraint on his speech.  Before filing this

complaint, Mr. Merrill's counsel contacted counsel for the FBI to request that the FBI lift the

remainder of the gag order in its entirety.  The FBI agreed only to modify the gag order, allowing

Mr. Merrill to reveal the identity of the customer of Calyx Internet Access who had been the

subject of the NSL a decade earlier.  However, the FBI refused to allow Mr. Merrill to modify

the gag order with respect to the Attachment to the 2004 NSL, subjecting him to a continued

prohibition on speaking about the kinds of information the FBI sought to obtain using an NSL.

The terms of the modified gag order are set out in a Stipulation and Order entered by the District Court on April 15, 2014, modifying the Judgment of Dismissal in the prior litigation.

*The Gag Order Harms Mr. Merrill*

30.    Since February 2004, Mr. Merrill has been forbidden from sharing the full scope of his experience as an NSL recipient.  That experience is directly relevant to his professional activities and personal views regarding government surveillance and Internet privacy—two topics that have become matters of widespread public interest and debate in the last year.

31.    Until the 2010 settlement, Mr. Merrill was forced to labor under the 2004 gag order, and he was barred from discussing the NSL letter or ensuing litigation, even with his own family members.  Publicly, Mr. Merrill was forced to speak anonymously, publishing an unattributed op-ed in the Washington Post in the fall of 2007.  The forced anonymity damaged his credibility and limited the range of his speech—particularly during the six years after the gag order was first imposed, when he could not identify himself as an NSL recipient.

32.    Even after the 2010 settlement, Mr. Merrill was prohibited from discussing fully the prior and ongoing litigation, as the gag barred him from speaking about anything related to the target of the NSL, the types of records requested in the Attachment, and other information that was redacted from the hundreds of pages of court documents filed under seal in his prior litigation.

33.    The terms of the continuing gag order on Mr. Merrill, as modified by Defendants on April 15, 2014, continue to prohibit him from speaking about the Attachment to the NSL.

34.    So long as Mr. Merrill is barred from discussing any portion of the NSL issued to him, he suffers the daily burden of having to censor his speech before speaking about the NSL statute, government surveillance, or online privacy more broadly.  This is a particularly onerous

burden for Mr. Merrill because he speaks widely on issues of online privacy and surveillance at public events and directs a nonprofit organization, the Calyx Institute (a separate corporate entity from Calyx Internet Access Corporation), whose mission is to develop educational materials and create and promote secure and private means of online communication.

*The Gag Order is Contrary to the Public Interest*

35.     The information included in the Attachment is central to the ongoing and recently intensified public debate regarding privacy and government surveillance.  This gag forbids Merrill from describing to the public what specific types of records the government demanded that he disclose, and he is therefore prohibited from informing the public about how broadly the FBI has construed its NSL authority.  The public currently has little idea how broadly the FBI has interpreted its authority to use NSLs to obtain "electronic communication transactional records." 18 U.S.C. § 2709(a).  NSLs are issued without prior judicial scrutiny, upon a mere certification from an FBI official that the information sought is "relevant to an authorized investigation to protect against international terrorism or clandestine intelligence activities."  18 U.S.C. § 2709(b).  No statute, regulation or other public document specifically defines the scope of information covered by "electronic communication transactional records" or what particular kinds of records the government believes it can lawfully obtain under this aspect of its NSL authority.

36.     The public debate regarding NSLs would be significantly enriched if Mr. Merrill could reveal the categories of information the FBI believed it had the authority to obtain simply by issuing an NSL, without any prior judicial review or authorization.

37.     The Defendants have imposed what amounts to a permanent gag on Mr. Merrill by forbidding him from speaking about this crucial aspect of the FBI's interpretation of its NSL

authority.  The Defendants continue to restrict Mr. Merrill's speech despite the absence of an ongoing investigation related to the 2004 NSL.

38.     The FBI's actions since 2010 reveal that the investigation of which the 2004 NSL was part has now concluded. It has been over a decade since Mr. Merrill received the NSL, and the FBI has since permitted Mr. Merrill to publicly identify the target of the NSL.  The FBI's continued restriction of Mr. Merrill's speech, despite the termination of the investigation associated with it, indicates that Defendants intend to keep the current gag—and likely countless others—in place permanently.

39.     This ongoing and effectively permanent prohibition on Mr. Merrill's speech is contrary to the President's recently stated policies regarding NSLs and the importance of transparency regarding their use.  In a speech delivered on January 17, 2014, at the Department of Justice, the President announced that he had "directed the Attorney General to amend how we use National Security Letters so this secrecy will not be indefinite, and will terminate within a fixed time unless the government demonstrates a real need for further secrecy." The President emphasized the need for public debate about surveillance programs including the use of NSLs, and only identified one countervailing interest justifying secrecy: the need to prevent disclosure to the subject of the investigation.  That interest no longer justifies the gag order on Mr. Merrill's speech; Mr. Merrill is now free to discuss not only the fact that he received the NSL, but also the identity of the NSL's target.

40.     For these reasons and others set forth below, plaintiff seeks an order lifting the gag order against him and an injunction prohibiting the FBI from seeking to enforce the gag and secrecy provisions with respect to its now ten-year-old NSL.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**VIOLATION OF FIRST AMENDMENT TO THE UNITED STATES CONSITUTION**

41.     Mr. Merrill incorporates and reasserts the allegations contained in paragraphs 1 through 40 of the Complaint, as if fully set forth herein.

42.     Permanent or effectively permanent bans on speech are prohibited by the First Amendment unless they meet the most exacting constitutional scrutiny, a standard the present gag cannot meet.  The gag order on Mr. Merrill currently in force constitutes a permanent ban on speech in violation of the First Amendment.  This Court should set aside the continuing gag order as unconstitutional.

43.     Further, the gag order violates the First Amendment because the government is under no obligation to review periodically the continuing need for the gag, and the burden lies with Mr. Merrill to initiate litigation repeatedly in order to contest its continuing lawfulness. Under the NSL statute the burden lies squarely on the gagged party to reinitiate judicial review under § 3511(b)(3) if he or she does not succeed in obtaining complete relief as a result of an initial challenge.  If the gagged party lacks the resources to mount a subsequent court challenge, he or she remains gagged permanently, as the government has no obligation to take any affirmative steps to justify or even to review the continuing necessity of the gag order.   The First Amendment does not permit the government to impose a permanent prohibition on speech without shouldering any burden to justify its continuing necessity.

### SECOND CAUSE OF ACTION

**NONDISCLOSURE ORDER IS NOT JUSTIFIED UNDER 18 U.S.C. § 3511**

44.     Mr. Merrill incorporates and reasserts the allegations contained in paragraphs 1 through 43 of the Complaint, as if fully set forth herein.

45.     The gag order currently in force cannot survive review under 18 U.S.C. § 3511(b) because the government cannot establish "good reason" to believe that disclosure may result in an enumerated harm that is related to an authorized investigation to protect against international terrorism or clandestine intelligence activities—the standard imposed by the Second Circuit's construction of § 3511(b)(3) in *John Doe Inc. v. Mukasey*, 549 F.3d at 882-883.

46.     Defendants cannot make this required showing, and a continuing gag on Mr. Merrill therefore violates 18 U.S.C. § 3511.  This court should thus set aside the continuing nondisclosure order.

## THIRD CAUSE OF ACTION

## NONDISCLOSURE ORDER EXCEEDS AUTHORITY IN 18 U.S.C. §§ 2709 AND 3511

47.     Mr. Merrill incorporates and reasserts the allegations contained in paragraphs 1 through 46 of the Complaint, as if fully set forth herein.

48.     The gag order currently in force is not authorized by 18 U.S.C. §§ 2709 and 3511, or any other statute.  Section 2709 establishes the authority of the FBI to issue gag orders upon recipients of NSLs.  By its terms, 18 U.S.C. § 2709 authorizes gag orders only to forbid disclosure "that the Federal Bureau of Investigation has sought or obtained access to information or records" pursuant to an NSL.

49.     The FBI has exhausted this authority to impose nondisclosure orders on Nicholas Merrill with respect to the 2004 NSL.  Plaintiff Merrill is free to disclose "that the [FBI] has sought or obtained access to information or records" pursuant to an NSL.  The FBI has permitted Mr. Merrill to identify himself as the recipient of the 2004 NSL, to reveal the identity of the target of the 2004 NSL and to divulge that he never in fact provided any records to the FBI

regarding the target. Mr. Merrill has, in other words, been permitted to disclose everything that falls within the statutory authority granted to the FBI to order nondisclosure.

50.     18 U.S.C. §§ 2709 and 3511 do not grant the FBI roving authority to issue gag orders relating to any aspect of NSLs and, in particular, the statutes provide no further authority to order nondisclosure once the recipient of an NSL has been permitted to identify himself, to identify the target of the NSL and to disclose the outcome of the NSL – i.e. whether the FBI in fact obtained records or not.  Here, the FBI has permitted Mr. Merrill to discuss all of these facts and more.  Mr. Merrill is permitted to discuss anything and everything relating the 2004 NSL, with the exception of the portions of the Attachment that remain subject to a gag order.  The statute simply does not authorize this continuing gag order.

51.     This limit on the statutory authority of the FBI to issue gags is consistent with the purpose of the gag order provision within the overall NSL statutory scheme.  No statutory purpose is served by a nondisclosure order where an NSL recipient has been permitted officially to disclose not only that he has received an NSL, but also the identity of the individual targeted by the NSL, the outcome of the NSL, and all other details aside from a description of the categories of records that the FBI sought to obtain.

52.     The continuing gag order on Mr. Merrill therefore exceeds the statutory authority granted by Congress and is contrary to law.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests this Court to:

a.  Grant this 18 U.S.C. § 3511(b) petition and set aside the nondisclosure order.

b.  Declare that the nondisclosure order that continues to bind Mr. Merrill violates the First Amendment.

c.  Declare that the nondisclosure order that continues to bind Mr. Merrill is
    unauthorized by 18 U.S.C. §§ 2709 and 3511 or any other statute, and is therefore
    unlawful.

d.  Vacate the nondisclosure order in its entirety.

e.  Enjoin Defendants from seeking to enforce the nondisclosure order and from
    penalizing Nicholas Merrill for failing to comply with it.

f.  Declare that the nondisclosure provisions of 18 U.S.C. §§ 2709 and 3511(b)(3)
    are unconstitutional insofar as they impose no obligation on the government to
    periodically review the continuing need for a nondisclosure order upheld under §
    3511(b), or to periodically reinitiate judicial review to justify the maintenance of
    such a nondisclosure order.

g.  Award plaintiff his attorneys' fees and costs.

h.  Grant such other and further relief as the Court deems just and proper.


Respectfully submitted,

Jonathan M. Manes
David A. Schulz
Lourdes Pantin, law student intern
Matthew Halgren, law student intern
Nicholas Handler, law student intern
MEDIA FREEDOM AND INFORMATION ACCESS
CLINIC
YALE LAW SCHOOL
P.O. Box. 208215
New Haven, CT 06520
Tel: (203) 432-9387
Fax: (203) 432-3034
jonathan.manes@yale.edu

December 11, 2014