UNITED STATES DISTRICT COURT
SOURTHERN DISTRICT OF NEW YORK
――――――――――――――――――――――――――――x
NICHOLAS MERRILL,

        Plaintiff,

        v.                                                    14 Civ. 9763 (VM)

LORETTA E. LYNCH et al.,

        Defendants.
――――――――――――――――――――――――――――x


**Reply Memorandum of Law in Support of the Government's
Motion to Dismiss or for Summary Judgment, and in
Opposition to Plaintiff's Motion for Summary Judgment**


                PREET BHARARA
                United States Attorney for the
                Southern District of New York
                86 Chambers Street
                New York, New York 10007
                Telephone: 212.637.2703
                Fax: 212.637.2702
                E-mail: benjamin.torrance@usdoj.gov

BENJAMIN H. TORRANCE
Assistant United States Attorney

    – Of Counsel –

## Table of Contents

Preliminary Statement .................................................................................................................. 1

Background .................................................................................................................................. 1

    A.   The USA FREEDOM Act of 2015 ............................................................................... 1

Argument ..................................................................................................................................... 4

    A.   The Government's Interest in Confidentiality of Law Enforcement Techniques, Methods, and Procedures Is Sufficient to Justify the Statutory Nondisclosure Requirement ............ 4

    B.   The Second Circuit's Test Remains Binding ................................................................... 8

    C.   The Nondisclosure Requirement Is Not Permanent ......................................................... 9

    D.   The FBI Has Not Forfeited the Justifications for Nondisclosure ................................... 11

Conclusion .................................................................................................................................. 14

## Table of Authorities

*Cases*:

*Alfred A. Knopf, Inc. v. Colby*,
   509 F.2d 1362 (4th Cir. 1975) ............................................................................... 12

*Boehner v. McDermott*,
   484 F.3d 573 (D.C. Cir. 2007) ............................................................................... 12

*Brooklyn Legal Services v. Legal Services Corp.*,
   462 F.3d 219 (2d Cir. 2006), ................................................................................... 9

*In re City of New York*,
   607 F.3d 923 (2d Cir. 2010) ................................................................................ 5, 6

*Coastal States Gas Corp. v. Department of Energy*,
   617 F.2d 854 (D.C. Cir. 1980) ................................................................................. 6

*Earth Pledge Foundation v. CIA*,
   128 F.3d 788 (2d Cir. 1997) ................................................................................... 11

*Earth Pledge Foundation v. CIA*,
   988 F. Supp. 623 (S.D.N.Y. 1996) ......................................................................... 11

*Fitzgibbon v. CIA*,
   911 F.2d 755 (D.C. Cir. 1990) ............................................................................... 12

*Frankel v. SEC*,
   460 F.2d 813 (2d Cir. 1972) .................................................................................... 6

*Frugone v. CIA*,
   169 F.3d 772 (D.C. Cir. 1999) ............................................................................... 11

*John Doe, Inc. v. Mukasey*,
   549 F.3d 861 (2d Cir. 2008), ........................................................................... passim

*John Doe, Inc. v. Holder*,
   665 F. Supp. 2d 426 (S.D.N.Y. 2009) ..................................................................... 9

*John Doe, Inc. v. Holder*,
   703 F. Supp. 2d 313 (S.D.N.Y. 2010) .................................................................. 4, 8

*NLRB v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975) ................................................................................................ 6

*Pickup v. Brown*,
   740 F.3d 1208 (9th Cir.) ........................................................................................ 12

*Wilson v. CIA*,
   586 F.3d 171 (2d Cir. 2009) ............................................................................ 11, 12

*Wolf v. CIA*,
   473 F.3d 370 (D.C. Cir. 2007) ............................................................................... 12

*Statutes*:

18 U.S.C. § 2511 .............................................................................................................. 5, 12

18 U.S.C. § 2709 ............................................................................................................. passim

18 U.S.C. § 3511 ............................................................................................................. passim

31 U.S.C. § 5326 ................................................................................................................... 6

*Rules*:

Fed. R. Civ. P. 25(d) ............................................................................................................. 1

Fed. R. Crim. P. 6(e) ............................................................................................................. 5

**Preliminary Statement**

Defendants, the Attorney General[1] and the Director of the Federal Bureau of Investigation, respectfully submit this reply memorandum of law in support of their motion to dismiss or for summary judgment, and in opposition to plaintiff Nicholas Merrill's motion for summary judgment.

Merrill persists in attempting to heighten the standard of review that applies in the Second Circuit, in disregarding the steps the FBI has taken to maximize his ability to disclose information he wishes to disclose, and in recasting the FBI's procedure of using a standard attachment to NSLs to apprise recipients of covered items as a statement of "secret law." But his arguments fail to overcome the holdings of the Court of Appeals and this Court. Indeed, in the time since the government's opening memorandum of law, Congress has reaffirmed the procedures and standards that the Second Circuit held make the NSL statute constitutional. Merrill's application should therefore be denied, and judgment should be entered for the government.

**Background**

**A.    The USA FREEDOM Act of 2015**

In the opening memorandum, the government explained the FBI's statutory authority to issue NSLs, and the Second Circuit's decision in *John Doe, Inc. v. Mukasey* holding that as long as the FBI adheres to certain procedural requirements, the statute and the use of NSLs is constitutional. In particular, the court of appeals held that if the FBI follows a reciprocal notice procedure—by which the government would inform an NSL recipient that the recipient may contest the NSL's nondisclosure requirement, and if the recipient objects the government would

---

[1]    Pursuant to Fed. R. Civ. P. 25(d), Attorney General Loretta E. Lynch is automatically substituted in place of her predecessor in this action.

bear the burden of initiating litigation to maintain that nondisclosure requirement—and, in any challenge to the nondisclosure requirement, meets its "burden to show that a good reason exists to expect that disclosure of receipt of an NSL will risk an enumerated harm," then the statute's nondisclosure requirement is constitutionally permissible. Since *John Doe, Inc.*, the government has been adhering to those procedures.

On June 2, 2015, Congress enacted the USA FREEDOM Act, Pub. L. No. 114-23, 129 Stat. 268. The Act revises the NSL statute in ways that ratify and codify the Second Circuit's decision in *John Doe, Inc.*, and further support the government's position in this case that the NSL's nondisclosure requirement is constitutional both on its face and as applied.

Section 502(g) of the USA FREEDOM Act revises the terms of 18 U.S.C. § 3511(b) to codify the reciprocal notice procedure. As amended, § 3511(b)(1)(A) provides an NSL recipient with two alternative means to obtain judicial review of a nondisclosure requirement: by filing a petition for judicial review or by notifying the government. If the recipient notifies the government that it wishes to have a court review a nondisclosure requirement, the government must apply for a nondisclosure order within thirty days. *Id.* § 3511(b)(1)(B). The Act calls on the district court to "rule expeditiously," and if the court determines that the requirements for nondisclosure are met, it must "issue a nondisclosure order that includes conditions appropriate to the circumstances." *Id.* § 3511(b)(1)(C), (b)(3).[2] The government's application for a nondisclosure order must include a certification from a specified government official containing "a statement of specific facts" indicating that the absence of a prohibition on disclosure may

---

[2] The House Committee Report states that section 502 of the Act "corrects the constitutional defects in the issuance of NSL nondisclosure orders found by the Second Circuit Court of Appeals in *Doe v. Mukasey*, 549 F.3d 861 (2d. Cir. 2008), and adopts the concepts suggested by that court for a constitutionally sound process." H. Rep. No. 114-109, at 24 (2015).

result in enumerated harms. *Id.* § 3511(b)(2).[3] Consistent with *John Doe, Inc.*, 549 F.3d 861, 875-76 (2d Cir. 2008), the Act requires the district court to issue a nondisclosure order if it determines "that there is reason to believe" that the absence of a nondisclosure order may result in one of the enumerated harms. 18 U.S.C. § 3511(b)(3).

The Act also repeals the provision (formerly in § 3511(b)(3)) under which an NSL recipient who unsuccessfully challenged a nondisclosure requirement a year or more after the issuance of the NSL must wait one year after before again seeking judicial relief.

Section 501(a) of the Act amends 18 U.S.C. § 2709(b)(1) to authorize NSLs only when a specified FBI official "us[es] a term that specifically identifies a person, entity, telephone number, or account as the basis for [the NSL]."

Section 502(a) of the Act revises 18 U.S.C. § 2709(c), the nondisclosure requirement. Section 2709(c)(1)(A) now expressly requires the government to provide the NSL recipient with notice of the right to judicial review in order for the prohibition on disclosure to apply, thus further codifying *John Doe, Inc.*'s reciprocal notice procedure. Otherwise, the new terms of § 2709(c) impose largely the same substantive requirements as former § 2709(c). The Act also adds § 2709(d), which provides that an NSL or a nondisclosure requirement accompanying an NSL is subject to judicial review under § 3511 and that an NSL must include notice of the availability of judicial review. 18 U.S.C. § 2709(d)(1)-(2); *see also* H. Rep. 114-109, at 25.

Further, section 502(f) of the USA FREEDOM Act requires the Attorney General to adopt procedures to require "the review at appropriate intervals" of nondisclosure requirements "to assess whether the facts supporting nondisclosure continue to exist." *See* USA FREEDOM Act

---

[3]     In further accordance with *John Doe, Inc.*, 549 F.3d at 884, the Act repeals the provision (formerly in § 3511(b)(2)-(3)) that gave conclusive effect to good-faith certifications by specified officials of certain harms.

§ 502(f)(1). The procedures must provide for "the termination of such a nondisclosure requirement if the facts no longer support nondisclosure," and the NSL recipient must be notified that the requirement has been terminated. *See id.* The Act directs the Attorney General to adopt such procedures by November 29, 2015. *See id.* § 502(f)(1).

Finally, section 603(a) of the Act permits NSL recipients to publicly disclose aggregated data about the NSLs that they receive. A person subject to a nondisclosure order accompanying an NSL may publish various types of semiannual or annual reports of aggregated data specified in the statute, or another form or manner of publication agreed to between the recipient and the government.

## Argument

**A. The Government's Interest in Confidentiality of Law Enforcement Techniques, Methods, and Procedures Is Sufficient to Justify the Statutory Nondisclosure Requirement**

Merrill's primary argument revolves around his contention that "the Attachment does not reveal [law enforcement] 'techniques and procedures' (i.e., *how* the FBI uses its lawful authority); it reveals *what* authority the FBI believes the statute grants." (Merrill Reply 1). But it is impossible to square that contention with the Attachment on its face—much less with common sense, the government's previously submitted declaration, or this Court's 2010 opinion, which concluded that the government had shown disclosure of the Attachment would provide targets of investigations with "valuable insights into the agency's investigative methods that could produce the harms the NSL statute sought to safeguard against." 703 F. Supp. 2d 313, 317 (S.D.N.Y. 2010).

That conclusion was correct: the Attachment plainly reveals investigative methods. Indeed, the Attachment is entirely about "how the FBI uses its lawful authority" under the NSL statute,

as it is in fact the implementation of that authority in the relevant contexts. As the FBI's Acting Assistant Director explained, disclosure of the attachment would reveal exactly "the methods used" in the FBI's counterterrorism and counterintelligence national security investigations. (Perdue Decl. ¶ 71).

The bright line drawn by Merrill between a law enforcement method or technique and an exercise of legal authority is illusory. As the government said in its opening memorandum, any information about what the government does can be described as information about what the government believes it can do, and if that description alone is enough to compel disclosure, there could never be a nondisclosure requirement, contrary to *John Doe, Inc.* and numerous other cases. The federal wiretap statute forbids a telecommunication provider (which Merrill was formerly) from disclosing the "existence of . . . the device used to accomplish" the wiretap, 18 U.S.C. § 2511(2)(a)(2)—but under Merrill's theory, a telecom provider could violate that provision without consequence, because revealing the nature of the device used would reveal the types of devices the government believes it can use for wiretaps. Grand jury testimony cannot be revealed by certain persons, Fed. R. Crim. P. 6(e), but Merrill would permit them to do so with impunity because revealing grand jury testimony would reveal the types of questions government attorneys believe they can ask or the types of witnesses they believe they can call. The police "field reports" shielded by *In re City of New York*, 607 F.3d 923, 934 n.11, 944 (2d Cir. 2010), concerning police techniques regarding infiltration and undercover monitoring of certain groups would, of necessity, also reveal what types of infiltration and monitoring the police department believes it can do.

In any case where disclosure about government authority is restricted, how the government uses its authority and what the government views as the scope of that authority are intertwined.

All of the matters described above may be of great public interest, as what the government is doing is always of public interest. But, as explained in the government's opening memorandum, the nondisclosure requirements are lawful, as the government's interests in keeping certain matters secret outweighs the interests in public disclosure.

Merrill seeks to recast the straightforward fact that the Attachment reveals investigative methods (as this Court concluded in 2010) as a "concern[] about secret law," insisting that "[n]one of the cases cited by the government" protects the secrecy of a governmental claim of authority. (Merrill Reply 3-4 & n.2). But it is difficult to understand how, for instance, "'memoranda [that] explain[] and/or discuss[] . . . claimed violations'" of securities law, *Frankel v. SEC*, 460 F.2d 813, 814 (2d Cir. 1972), or the police "field reports" regarding infiltration and surveillance, *In re City of New York*, 607 F.3d at 934 n.11, 944, would not shed light on the government's claim to authority.[4] In contrast, the FOIA cases that require disclosure of "secret law" concern very different documents, such as agency guidance or precedent applied by agency staff in their dealings with the public, *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 869 (D.C. Cir. 1980), i.e., "documents which have the force and effect of law," *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975). The Attachment does not come close. The law that is applicable in this case is no secret: it is in the statute, which explains that the FBI can seek "subscriber information and toll billing records information, or electronic communication transactional records" through an NSL as long as the records are "relevant to an authorized investigation to protect against international terrorism or clandestine intelligence activities." 18 U.S.C. § 2709(a), (b)(1).

---

[4]    Congress has provided for mandatory nondisclosure of Treasury Department orders requiring financial institutions to take action the government finds it "necessary to carry out the purposes" of currency-transaction-reporting laws, 31 U.S.C. § 5326, plainly implicating the scope of the government's authority.

Nor is it true that the "breadth" of the nondisclosure order "is not consistent with an interest in protecting the effectiveness of techniques." (Merrill Reply 6). The fact that the FBI is shielding a currently dormant but lawful technique from disclosure is entirely consistent with protecting its efficacy, as it may be used in the future.[5] The FBI should not be discouraged from forbearing use of its authority by making the price of that forbearance the loss of the authority altogether.

Merrill's argument, at bottom, seeks to aggrandize the importance of the Attachment. But the Second Circuit has already said, even when this case concerned more than just the Attachment, that "[t]he information subject to nondisclosure is extremely limited." 549 F.3d at 884 n.16. It is not correct that the secrecy of the law enforcement methods in the Attachment is fatal to democratic debate, as Merrill speculates, or that the contextual differences between internet records and telephone records means that the FBI has "misled" the public about its authority by referring to them as "parallel" (Merrill Reply 9-11).

Merrill also criticizes the government for seeking to protect investigative techniques "untethered" from ongoing investigations. But as the government explained before, the statute—both now and then—has no such requirement. Indeed, the statute's own text suggests that the investigation justifying nondisclosure need not be the same one that supported the request for information: the information requested must be relevant to an "investigation to protect against international terrorism or clandestine intelligence activities," 18 U.S.C. § 2709(b)(1), but the nondisclosure can be based on a need to protect against "interference with a *criminal*, counterterrorism, or counterintelligence investigation," *id.* § 2709(c)(1)(B)(ii) (emphasis added). That the nondisclosure provision includes an entire category of investigations that would not

---

[5] If it were not, that would undercut the FBI's rationale for nondisclosure of that technique, but not for nondisclosure of the Attachment as a whole.

support the issuance on an NSL in the first place (i.e., general criminal investigations) compels the conclusion that the nondisclosure requirement need not be tied to the case that led to the issuance of the NSL. That was true in 2010, when this Court correctly ruled the government had justified nondisclosure of the Attachment on grounds unrelated to the underlying investigation, 703 F. Supp. 2d at 317, and remains true today.[6]

**B.   The Second Circuit's Test Remains Binding**

Ultimately, the question under § 2709(c) and *John Doe, Inc.* is whether the government has met its burden of showing a "good reason" to expect that disclosure will risk an enumerated harm, and "some basis" to conclude that the disclosure is linked to the risk. 549 F.3d at 881, 883. In applying that standard, a court must "normally defer" to the government's assessment of risk. *Id.* at 881.

Merrill seeks to have this Court overturn that Second Circuit holding, but his efforts are meritless. It is true, as Merrill says, that the Second Circuit did not hold "that every application of the [statutory nondisclosure requirement] would be constitutional" (Merrill Reply 19)—but that is precisely why the court of appeals announced a standard for courts to apply going forward as NSL recipients sought to challenge nondisclosure orders: the "good reason"/"some basis" standard. Moreover, Congress has recently implicitly reaffirmed that standard for case-by-case

---

[6]   As the government noted in its opening memorandum, Merrill's statement that this Court "was careful to limit its [2010] holding to situations where the underlying investigation was ongoing" (Merrill Reply 23) is wrong. (Gov't Mem. 8-9, 19-20). Although this Court's discussion of the effect on future or other investigations was extensive, Merrill conclusorily asserts that that was "not the basis" of the decision. That flatly contradicts the Court's language: "the Court finds that the Government has demonstrated a reasonable likelihood that disclosure of the Attachment in its entirety could inform current *targets* [plural] of law enforcement investigations, *including* [but not limited to] the particular target of the Government's ongoing inquiry in this action, as well as, potentially, *future targets* [who are, obviously, not the subjects of an 'ongoing' underlying investigation]." 703 F. Supp. 2d at 316-17 (emphasis and bracketed language added).

challenges, revising § 3511(b) against the background of *John Doe, Inc.*'s standard, of which it was obviously aware, H.R. Rep. No. 114-109, at 24 (2015) (noting that section 502 of the Act adopts *John Doe, Inc.*'s "concepts . . . for a constitutionally sound process"). In so doing, Congress ratified the very standard Merrill now argues should not apply.[7]

Merrill says that standard does not apply to future as-applied challenges, but there is nothing else it could apply to. He insists that the circumstances of this case are "not on all fours" with his prior challenge because the FBI is merely seeking to protect its secret interpretation of the law (which is wrong, as explained above), or because the FBI is acting on a "whim" (which is wrong, as explained below). (Merrill Reply 19). But that only begs the question: if the FBI is acting for an improper purpose, it will be unable to show a "good reason" to believe an enumerated harm will result. Merrill's efforts to escape the deferential standard directed by the Second Circuit are both illogical and unsupported by any case contradicting the Second Circuit's explanation that facial and as-applied challenges are governed by the same legal rule. *Brooklyn Legal Services v. Legal Services Corp.*, 462 F.3d 219, 228 (2d Cir. 2006), *overruled on other grounds*, *Bond v. United States*, 131 S. Ct. 2355, 2361 (2011).

## C. The Nondisclosure Requirement Is Not Permanent

Nor is Merrill correct that the nondisclosure requirement is permanent—and this Court has held that it is not. 665 F. Supp. 2d 426, 433 (S.D.N.Y. 2009). Merrill complains that it is not sufficient that he can return periodically to court to challenge the nondisclosure requirement (Merrill Reply 15)—but the Second Circuit said that it is. 549 F.3d at 883-84 & n.16 ("limiting

---

[7] Because Congress reaffirmed the *John Doe, Inc.* standard—and more generally, because there is no basis in the statute for Merrill's request for a firm time limit on a nondisclosure order (Merrill Reply 25)—Merrill is incorrect to argue that such a time limit would further Congress's intent. Both the recent amendment and the *John Doe, Inc.* decision permit the FBI to maintain a nondisclosure requirement as long as it can show there is "good reason" to do so.

an NSL recipient to annual opportunities thereafter to terminate the nondisclosure requirement does not violate First Amendment procedural requirements"). And Congress recently removed the language limiting challenges to once per year, further ensuring that a nondisclosure requirement will not be unduly or unconstitutionally prolonged. *See* USA FREEDOM Act § 502(f).

Merrill argues that whether a restriction is permanent depends on the facts, and that there must be some circumstances that would make it end. (Merrill Reply 15). But he persists in disregarding the facts—the fact that, without litigation, the FBI quickly agreed to lift the nondisclosure order regarding the entire NSL except for the attachment in 2014;[8] the fact that the FBI has on several occasions (including during this litigation) removed redactions on portions of the Attachment (Gov't Mem. 22-23);[9] and the fact that the government reached a settlement in 2010 with Merrill, by which he dropped his appeal from the decision he now seeks to revisit, permitting him to make additional disclosures not ordered by any court.

Furthermore, it is untrue that the FBI's justifications for nondisclosure depend on its "whims," "preferences," or "caprice." (Merrill Reply 15-17, 19). The FBI's justifications must be—and have been—supported by evidence sufficient to show the Court "some basis" for the

---

[8] Merrill's assertion that "[t]he government did not change its position [after 2010] until Mr. Merrill undertook the burden of bringing new litigation and filed his motion for summary judgment" (Merrill Reply 16) is simply false. The FBI acceded to the bulk of Merrill's request upon receiving an email in 2014. Only after accepting the government's voluntary decision to allow disclosure in the 2014 stipulation did Merrill bring new litigation, without further notice or request to the government. (Gov't Mem. 9-10). To the extent Merrill is complaining that he had the burden of initiating litigation, that is only because the Second Circuit held that it is his burden. 549 F.3d at 883-84.

[9] Merrill criticizes the government for "vigorous[ly]" opposing certain disclosure in 2010 (Merrill Reply 15), but he was not present at the *ex parte* conference held on February 18, 2010, where the government offered justifications for nondisclosure of some points (which the Court accepted) and conceded that disclosure would be permissible on others (which the Court also accepted).

10

conclusion that disclosure will risk an enumerated harm. *John Doe, Inc.*, 549 F.3d at 881. While that evidence must be reviewed deferentially under the Second Circuit's decision, deferential review is far from acceptance of a "whim." Again, the question is not what the FBI wants, but what disclosure will risk the statutorily enumerated harms.

The USA FREEDOM Act amendments provide further protection for NSL recipients going forward. That enactment requires the government to issue procedures to require "the review at appropriate intervals" of nondisclosure requirements "to assess whether the facts supporting nondisclosure continue to exist," and to terminate the nondisclosure requirement if it is no longer factually supported. *See* USA FREEDOM Act § 502(f)(1). Those procedures have not yet been promulgated and accordingly their effect on this case has not yet been determined; but the requirement confirms that NSLs' nondisclosure orders are not intended to be, and will not be, permanent.

**D.   The FBI Has Not Forfeited the Justifications for Nondisclosure**

Merrill next complains that certain information is in the public domain and therefore must be released. The government previously agreed with Merrill that some items listed in the Attachment had been previously disclosed and agreed to unredact them. (Gov't Mem. 13-14).

But Merrill is wrong about the others. The report he cites (Merrill Reply 17) reveals a different piece of information than what is in the Attachment. And a disclosure by someone else (including Congress) is not the same as a disclosure by the FBI. *See Wilson v. CIA*, 586 F.3d 171, 186 (2d Cir. 2009); *Earth Pledge Foundation v. CIA*, 128 F.3d 788 (2d Cir. 1997), *aff'g and adopting the op. in* 988 F. Supp. 623, 627-28 (S.D.N.Y. 1996); *Frugone v. CIA*, 169 F.3d 772, 774 (D.C. Cir. 1999). The courts have recognized that official disclosure by the responsible agency can cause harm to its operations, especially in the national security realm, even when the

same or similar information may already be public. *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007); *Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990).

Merrill contends this principle does not apply in a First Amendment case, but *Wilson*—the leading case in the Second Circuit regarding official disclosure—was a First Amendment case. 586 F.3d at 173-74; *see Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1370 (4th Cir. 1975). Merrill attempts to distinguish *Wilson* by pointing to the plaintiff's voluntary assumption of a duty not to disclose. (Merrill Reply 18). But Merrill voluntarily entered the highly regulated telecommunications industry, where providers are subject to and thus implicitly accept restrictions on disclosures (*e.g.*, 18 U.S.C. § 2511 (regulating disclosure and interception of communications)). At least in such a context, "[t]he government can . . . limit disclosures by persons who are not its employees without running afoul of the First Amendment": just as "[p]rivate attorneys who reveal their clients' confidences may be punished for doing so" and voluntarily accept that restriction by seeking a law license. *Boehner v. McDermott*, 484 F.3d 573, 577-78 & n.2 (D.C. Cir. 2007) ("There are many federal provisions that forbid individuals from disclosing information they have lawfully obtained."); *see Pickup v. Brown*, 740 F.3d 1208, 1228 (9th Cir.) ("When professionals, by means of their state-issued licenses, form relationships with clients, the purpose of those relationships is to advance the welfare of the clients, rather than to contribute to public debate."), *cert. denied*, 134 S. Ct. 2871 (2014).

Similarly, Merrill suggests that the public is broadly aware of the FBI's authority already,[10] and there is therefore no need for secrecy as law-enforcement targets can evade lawful authority already. (Merrill Reply 20-21). His reliance on his own inexpert assertions of how law enforcement may be evaded contradicts the Second Circuit's requirement that the Court must

---

[10] Somewhat contradicting his assertion that public debate over the FBI's authority has been impoverished by lack of public knowledge. (Merrill Reply 11-12).

"normally defer to the Government's considered assessment" of risk. 549 F.3d at 881. Regardless, Merrill's argument that it is "irrelevant" that the FBI is using an NSL, and needs to protect the confidentiality of how NSLs are used, ignores the statute and the very nature of a "national security letter." NSLs may only be used when the information sought is "relevant to an authorized investigation to protect against international terrorism or clandestine intelligence activities." 18 U.S.C. § 2709(b)(1). An agency's view of what is necessary in that particular type of investigation deserves special deference, given the courts' traditional deference to the executive branch in national security matters. And as the FBI has already explained, that limited context means that revelation of the Attachment would disclose not just the FBI's authority, but what types of information the FBI uses and deems important in those particular types of investigation. (Gov't Mem. 6, 16; Perdue Decl. 55-71). Thus, in the FBI's considered judgment, the connection of the Attachment to an NSL specifically would be of great interest to the United States' adversaries (including foreign intelligence services) and other subjects of national security investigations.

## Conclusion

The FBI has demonstrated "good reason" to believe there is a risk that disclosure of the Attachment would lead to a statutorily enumerated harm, as the Court concluded in 2010. Judgment should therefore be entered for the government.

Dated:   New York, New York
         July 31, 2015

Respectfully submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for Defendants

By: /s/ Benjamin H. Torrance
BENJAMIN H. TORRANCE
Assistant United States Attorney
86 Chambers Street
New York, New York 10007
Telephone: 212.637.2703
Fax: 212.637.2702
E-mail: benjamin.torrance@usdoj.gov