**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NICHOLAS MERRILL,

                          Plaintiff,

        v.                                                            14 CIV. 9763 (VM)

LORETTA LYNCH, in her official capacity
as Attorney General of the United States, and
JAMES B. COMEY, in his official capacity
as Director of the Federal Bureau of
Investigation,

                          Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR ATTORNEYS' FEES AND COSTS**

Jonathan Manes, supervising attorney
David A. Schulz, supervising attorney
Media Freedom and Information Access Clinic
YALE LAW SCHOOL
P.O. Box. 208215
New Haven, CT 06520
Tel: (203) 432-9387
Fax: (203) 432-3034
jonathan.manes@yale.edu

*Attorneys for Plaintiff Nicholas Merrill*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT.......................................................................................................................2

I.     PLAINTIFF IS ENTITLED TO ATTORNEYS' FEES UNDER THE EQUAL
       ACCESS TO JUSTICE ACT..............................................................................2

       A.     Plaintiff Is the Prevailing Party Under EAJA. ..................................... 2

       B.     The Government's Positions Were Not Substantially Justified............................ 4

II.    THE FEES SOUGHT ARE REASONABLE.................................................................8

       A.     The Number of Hours Claimed Is Reasonable. ..................................... 9

       B.     The Rates Claimed Are Reasonable. .................................................. 10

III.   PLAINTIFF IS ENTITLED TO AN AWARD OF COSTS.............................................15

CONCLUSION.................................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*ACLU v. Dep't of Defense*,
  No. 09-cv-8071 (S.D.N.Y. filed Sept. 22, 2009) .................................................... 12

*ACLU v. Dep't of Justice*,
  No. 10-cv-436 (D.D.C. filed Mar. 16, 2010) ......................................................... 12

*ACLU v. NSA*,
  No 13-cv-9198 (S.D.N.Y. filed Dec. 30, 2013) ..................................................... 12

*Adorno v. Port Auth. of N.Y. & N.J.*,
  685 F. Supp. 2d 507 (S.D.N.Y. 2010) ................................................................... 14

*Aulaqi v. Obama*,
  727 F. Supp. 2d 1 (D.D.C. 2010) .......................................................................... 13

*Blum v. Stenson*,
  465 U.S. 886 (1984) ............................................................................................... 8

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*,
  532 U.S. 598 (2001) ............................................................................................... 3

*Comm., I.N.S. v. Jean*,
  496 U.S. 154 (1990) ............................................................................................. 10

*Doe v. Gonzales*,
  386 F. Supp. 2d 66 (D. Conn. 2005) ..................................................................... 11

*Doe v. Holder*,
  703 F. Supp. 2d 313 (S.D.N.Y. 2010) .................................................................... 5

*Ericksson v. Comm'r of Soc. Sec.*,
  557 F.3d 79 (2d Cir. 2009) ..................................................................................... 4

*Froio v. McDonald*,
  No. 12-3483, 2015 WL 3439252 (U.S. Ct. App. Vet. Cl. May 29, 2015) ............. 15

*George v. Rehiel*,
  No. 10-cv-586 (E.D. Pa. filed Feb. 10, 2010) ....................................................... 13

*Gierlinger v. Gleason*,
  160 F.3d 858 (2d Cir. 1998) ................................................................................. 14

*Green v. Bowen*,
  877 F.2d 204 (2d Cir. 1989) ................................................................................... 1

*Healey v. Leavitt*,
  485 F.3d 63 (2d Cir. 2007) ................................................................................. 4

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ...................................................................................... 8, 9

*In re National Security Letter*,
  No. 11-cv-2173 (N.D. Cal.) ................................................................................ 11

*In re National Security Letter*,
  No. 11-cv-2667 (N.D. Cal.) ................................................................................ 11

*In re National Security Letter*,
  No. 13-cv-1165 (N.D. Cal.) ................................................................................ 11

*In re National Security Letter*,
  No. 13-mc-80089 (N.D. Cal.) ............................................................................. 11

*In re Orders Interpreting Section 215 of the PATRIOT Act*,
  No. Misc 13-02, 2013 WL 5460064 (Foreign Intel. Surv. Ct. 2013) ....................... 12

*Internet Archive v. Mukasey*,
  No. 07-cv-6346 (N.D. Cal. filed Dec. 14, 2007) ................................................... 11

*Jalatzai v. Gates*,
  No. 10-cv-319 (D.D.C. filed Feb. 26, 2010) ........................................................ 13

*Kerin v. U.S. Postal Serv.*,
  218 F.3d 185 (2d Cir. 2000) ................................................................................ 3

*Laffey v. Northwest Airlines, Inc.*,
  572 F. Supp. 354 (D.D.C. 1983) ........................................................................ 15

*Luciano v. Olsten Corp.*,
  109 F.3d 111 (2d Cir. 1997) .......................................................................... 9, 15

*LV v. N.Y. City Dep't of Educ.*,
  700 F. Supp. 2d 510 (S.D.N.Y. 2010) ................................................................ 14

*M.C. ex rel. E.C. v. Dep't of Educ.*,
  No. 12-cv-9281, 2013 WL 2403485 (S.D.N.Y. June 4, 2013) ........................... 9, 15

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) ........................................................................................... 9

*Moon v. Gab Kwon*,
  No. 99-cv-11810, 2002 WL 31512816 (S.D.N.Y. Nov. 8, 2002) ............................ 9

*Pierce v. Underwood*,
  487 U.S. 552 (1988)................................................................................................ 4, 10

*Pres. Coal. of Erie County v. Fed. Transit Admin.*,
  356 F.3d 444 (2d Cir. 2004) .......................................................................................... 3

*Qatanani v. Dep't of Homeland Security*,
  No. 12-cv-5379 (D.N.J. filed Aug. 24, 2012) ............................................................ 12

*Qatanani v. Dep't of Justice*,
  No. 12-cv-4042 (D.N.J. filed June 29, 2012) ............................................................ 12

*Ramos v. Flowers*,
  56 A.3d 869 (N.J. App. Div. 2012)............................................................................. 13

*Salahi v. Obama*,
  710 F. Supp. 2d 1 (D.D.C. 2010) ................................................................................ 13

*Vacchio v. Ashcroft*,
  404 F.3d 663 (2d Cir. 2005) .......................................................................................... 4

*Vilkhu v. City of New York*,
  No. 06-cv-2095, 2009 WL 1851019 (S.D.N.Y. June 26, 2009) ............................... 14

**Statutes**

18 U.S.C. § 3511 ............................................................................................................... 3

28 U.S.C. § 1920 ............................................................................................................. 15

28 U.S.C. § 2412(a)(1)..................................................................................................... 15

28 U.S.C. § 2412(d)(1)(A) ................................................................................................ 2

28 U.S.C. § 2412(d)(1)(B) ................................................................................................ 2

28 U.S.C. § 2412(d)(2)(A)............................................................................................... 10

28 U.S.C. § 2412(d)(2)(B) ................................................................................................ 2

28 U.S.C. § 2412(d)(2)(D)................................................................................................ 4

## PRELIMINARY STATEMENT

Plaintiff brought this suit in order to obtain a court order vacating in full the gag order that had, since 2004, prevented him from speaking freely about the National Security Letter that the FBI served on him in that year. This Court has awarded him a complete victory. Many of the positions that the government defended in this case were "extreme" and "overly broad," as this Court recognized. The government did not appeal this Court's decision.

Plaintiff now seeks an award of attorneys' fees and costs under the Equal Access to Justice Act ("EAJA") totaling $83,089. This award, which reflects the reasonable value of the work performed by Plaintiff's counsel, is warranted under EAJA because Plaintiff is the "prevailing party" and the government's position was "substantially unjustified." An award of fees is also necessary in order to vindicate the broader purpose of the EAJA fee-shifting provision—that is, to "decrease the chance that certain individuals . . . may be deterred from seeking review of, or defending against unreasonable governmental action because of the expense involved in securing the vindication of their rights." *Green v. Bowen*, 877 F.2d 204, 206 (2d Cir.1989) (internal quotation and citation omitted).

Hundreds of thousands of NSLs have been issued since the 2001 PATRIOT Act vastly expanded their domestic use, and nearly all of those NSLs were accompanied by an indefinite nondisclosure order. As a result, countless individuals and organizations remain subject to restrictions on their speech that have been in place for as many as 14 years and counting. These private citizens are prevented from recounting their experience of being issued an NSL, and are forbidden from telling the public what they know firsthand about how the FBI has used this controversial surveillance tool. Yet almost no NSL recipients can or will bear the legal expense of challenging these gag orders. In order to mount a legal challenge to a National Security Letter

1

nondisclosure order, an NSL recipient must obtain highly specialized legal assistance that is both uncommon and costly. *Pro bono* representation in such cases is extraordinarily scarce.

Therefore, in the absence of the prospect of an attorneys' fee award, there is essentially no chance that individuals who remain subject to nondisclosure orders will seek initiate judicial review, even if the gag orders binding them are now patently unjustifiable. Finding that a fee award is justified in this case would thus serve the core purpose of EAJA by incentivizing lawyers to represent NSL recipients with meritorious claims, and by permitting NSL recipients to challenge overbroad nondisclosure orders, like the one here, that persist long after any reasonable justification has lapsed.

## ARGUMENT

### I.    PLAINTIFF IS ENTITLED TO ATTORNEYS' FEES UNDER THE EQUAL ACCESS TO JUSTICE ACT.

Under the EAJA, a "prevailing party" is entitled to attorneys' fees in a civil action brought against the United States or its officials unless the government can establish that its position "was substantially justified." 28 U.S.C. § 2412(d)(1)(A). Plaintiff Nicholas Merrill is entitled to fees under EAJA because he was the prevailing party in this case and neither the government's actions nor its litigation positions were substantially justified.[1]

### A.    Plaintiff Is the Prevailing Party Under EAJA.

A party "prevail[s] . . . whenever there is a 'court ordered change in the legal relationship between the plaintiff and the defendant' or a 'material alteration of the legal relationship of the

---

[1] Plaintiff meets the other eligibility requirements for fees under EAJA. This motion is timely filed within 30 days of final judgment. The Judgment in this case became final on November 16, 2015, the date that the government's time to appeal expired. *See* ECF No. 45; 28 U.S.C. § 2412(d)(1)(B). Plaintiff meets EAJA's financial requirements. *See* Second Declaration of Nicholas Merrill ("Second Merrill Decl.") ¶ 1; 28 U.S.C. § 2412(d)(2)(B). Finally, no "special circumstances" make an award of fees unjust here. *See* 28 U.S.C. § 2412(d)(1)(A).

parties.'" *Pres. Coal. of Erie County v. Fed. Transit Admin.*, 356 F.3d 444, 452 (2d Cir. 2004) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001)).  This is not an onerous standard.  A party "prevail[s]" when it has "succeeded on any significant issue in litigation which achieved some of the benefit the part[y] sought in bringing suit." *Kerin v. U.S. Postal Serv.*, 218 F.3d 185, 189 n.1 (2d Cir. 2000).

Plaintiff here is clearly the prevailing party. Plaintiff filed this lawsuit for one reason: to obtain a court order lifting the remaining portions of the nondisclosure requirement imposed upon him by a National Security Letter issued by the FBI in 2004.  *See* Decision and Order ("Op.") 27, 34, ECF No. 47; *compare* Complaint 13-14, ECF No. 1.  This Court's Decision and Order on Plaintiff's motion for summary judgment awarded Plaintiff all of the relief he sought. In particular, the Court held that the nondisclosure order could not be justified under the NSL statute, 18 U.S.C. § 3511(b)(3), because there was no "good reason" to expect that disclosure would risk any of the enumerated harms.  Op. 27, 34.  In ruling on this basis, the Court fully endorsed one of the three theories that Plaintiff advanced in this litigation for why the nondisclosure requirement was unlawful.  *See id.*; *compare* Complaint 11-12 ("Second Cause of Action: Nondisclosure Order Is Not Justified Under 18 U.S.C. § 3511").[2]  Because Plaintiff has been granted complete relief as a result of this Court's decision, Plaintiff is the "prevailing party" entitled to fees under EAJA.

---

[2] Plaintiff also argued that the nondisclosure order was unlawful because it violated the First Amendment to the U.S. Constitution, and because the NSL statute, properly construed, did not permit the nondisclosure order in the changed circumstances of Plaintiff's case.  *See* Complaint 11-13. The Court did not reach those claims because it granted complete relief on the basis of Plaintiff's claim under 18 U.S.C. § 3511.  *See* Op. 32 ("Because the Court finds that the Government has not shown a good reason for continued non-disclosure of the Attachment, pursuant to Section 3511, the Court need not (and should not) consider Merrill's other arguments . . . .").

**B.    The Government's Positions Were Not Substantially Justified.**

"[T]he Government bears the burden of showing that its position was substantially justified." *Healey v. Leavitt*, 485 F.3d 63, 67 (2d Cir. 2007) (internal quotations omitted). The government must demonstrate that its "position had a reasonable basis in both law and fact." *Vacchio v. Ashcroft*, 404 F.3d 663, 674 (2d Cir. 2005). "To meet [this] burden, [the government] must make a 'strong showing' that its action was 'justified to a degree that could satisfy a reasonable person.'" *See Healey*, 485 F.3d at 67 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

In order to determine whether the government has met this burden, courts must "review both 'the position taken by the United States in the civil action, [and] the action or failure to act by the agency upon which the civil action is based.'" *Ericksson v. Comm'r of Soc. Sec.*, 557 F.3d 79, 82 (2d Cir. 2009) (quoting 28 U.S.C. § 2412(d)(2)(D).  An award of fees is warranted if either the underlying government action or the government's litigation position is unreasonable. *Healey*, 485 F.3d at 67 ("[T]he Government's prelitigation conduct or its litigation position could be sufficiently unreasonable by itself to render the entire Government position not 'substantially justified.") (internal quotation omitted). Plaintiffs make a few observations as to why the government will not be able to meet its burden here.

The position that the government took prior to the initiation of this lawsuit was unreasonable because the FBI insisted on maintaining the nondisclosure requirement with respect to material that it subsequently conceded in litigation it had no basis to suppress.  As discussed below, the government took this position even though Plaintiff approached the government months in advance of filing this lawsuit in order to give the government the opportunity to voluntarily lift the nondisclosure order to the greatest extent possible.

As noted already, this lawsuit challenged the government's refusal to lift the remaining portions nondisclosure order that was first imposed on Mr. Merrill in 2004. Initially, the nondisclosure order forbade the Plaintiff from identifying himself as the recipient of an NSL or from disclosing anything else about the NSL, including the categories of records the FBI sought, which were specified in an Attachment that accompanied the NSL. Op. 3.

As a result of a prior lawsuit initiated in 2004 that resulted in favorable decisions from this Court and the Court of Appeals, the nondisclosure order was narrowed to some extent by 2010, when that case ended. Op. 3-7. In particular, this Court ordered the government to disclose certain categories listed in the Attachment corresponding to (1) material that the NSL statute itself identifies as permissible for the FBI to obtain using an NSL, and (2) material that the FBI had publicly acknowledged it obtained using an NSL. Op. 6 (citing *Doe v. Holder*, 703 F. Supp. 2d 313 (S.D.N.Y. 2010)). And in July 2010, the Court endorsed a settlement agreement under which Mr. Merrill would be able to identify himself as the recipient of the NSL, but which otherwise left the nondisclosure order in place. Op. 7.

The gag order then remained unchanged until Plaintiff approached Defendant's counsel in early 2014 to seek its voluntary termination. In response, the government insisted that it would maintain the nondisclosure order on the Attachment precisely at it stood in 2010, when the prior litigation ended, even though the government agreed to lift the rest of the nondisclosure order, permitting Mr. Merrill to discuss, for instance, the target of the 2004 NSL. Op. 7. Plaintiff filed suit to challenge the continuing validity of the gag on the Attachment.

This prelitigation position with respect to the Attachment was unreasonable and indefensible, as demonstrated by the government's own concessions in the course of subsequent litigation. In particular, before this litigation began, the government maintained that it was

entitled to suppress all of the categories of records listed in the Attachment, with the exception of six one- or two-word snippets that this Court had ordered the government to disclose in 2010. *See* Op. 7; Merrill Decl. Ex. C, ECF No. 19-3 (redacted attachment). However, after Plaintiff filed his motion for summary judgment the government "conceded that non-disclosure was no longer needed for certain categories of records the FBI seeks – in particular the request for 'Internet Service Provider (ISP),' '[a]ll e-mail addresses associated with the account,' and 'Screen names or other on-line names associated with the account.'" Op. 23. As this Court observed, the fact that the government only made this concession after Plaintiff filed suit and the FBI was required to justify continued non-disclosure "lends credence to [Plaintiff's] argument that, for years, the non-disclosure requirement against him was overly broad and could not be supported by a 'good reason.'" Op. 24.

Moreover, the government's refusal to agree to lift the nondisclosure order in advance of this lawsuit was inconsistent with the formal remarks the President made on January 17, 2014— well before this litigation commenced—in which he directed the Attorney General to limit the duration of NSL gag orders. Op. 32; Manes Decl. Ex. S, ECF No. 20-19. The government's position was also in tension with the FBI's public announcement on February 3, 2015—before summary judgment briefing commenced—that it would presumptively terminate NSL nondisclosure orders "at the earlier of three years after the opening of a fully predicated investigation or the investigation's close." Manes Decl. Ex. T, ECF No. 20-20.

The positions that the government ultimately defended in litigation were also substantially unjustified. Even after conceding that the three phrases noted above had been improperly suppressed, the government continued to defend many inscrutable and patently unreasonable prohibitions on what Mr. Merrill could say about the Attachment. For example,

the government refused to permit Mr. Merrill to use the plural form of certain words in the

Attachment, insisting that "while the public can know that [the FBI] seeks records of an

'address' and a 'telephone number,' there is a 'good reason' to prevent disclosure of the fact that

the Government can seek 'addresses' and 'telephone numbers.'" Op. 25. Similarly, the

government sought "to prevent Merrill from disclosing that the Attachment requested

'Subscriber day/evening telephone numbers'" even though the Government conceded that "it is

already publicly known that the Government can use NSLs to obtain a telephone number, more

generally." Op. 24. This Court recognized that such "[r]edactions . . . defy common sense" and

were an "example of the extreme and overly broad character of [the government's] redactions."

Op. 25.

The government's litigation position was unreasonable in other respects as well. The

Declaration of Gary Perdue, which was the only evidence submitted by the FBI in support of the

nondisclosure order, argued—under penalty of perjury—that one category of information should

not be disclosed even though that category had not been subject to the nondisclosure requirement

since at least 2010 and "was not redacted by the government in its submissions or even in the

Perdue Declaration." Op. 24 n.10. *Compare* Declaration of Gary Perdue ¶ 70, ECF No. 30

("Perdue Decl."), *with* Merrill Decl., Ex. C, ECF No. 19-3. This clear error suggests that the

government was at least careless in staking out its litigation position, and that its purported

justifications for maintaining the gag order were indeed "overly broad." Op. 24.

Equally unjustifiable was the Government's position that it could forbid Mr. Merrill from

speaking about the categories of records that the FBI sought to obtain using an NSL even when

that information was "*publicly known* (and acknowledged by other agencies)." Op. 31 (emphasis

in original).[3]  In particular, nearly all of the suppressed categories in the Attachment matched information already publicly disclosed by the government in a 2009 Department of Justice Office of Legal Education Manual, Op. 18-21; a 2002 letter from the Deputy Attorney General to Senator Patrick Leahy that was published in a 2003 Senate Report, Op. 21-22; a 2008 Memorandum Opinion for the FBI General Counsel, Op. 22-23, 25-26; a 2007 Department of Justice Office of Inspector General Report, Op. 23 n.9, 26 n.11; and even the NSL statute itself, Op. 22-23.

The fact that all of these sources of official public information were published between 2003 and 2009—predating this litigation by several years—only underscores that the government truly had no "good reason" to maintain the gag on the Attachment for years after the investigation underlying the 2004 NSL was closed.

For all of these reasons, the government cannot meet its burden to show that its prelitigation conduct and its litigation positions were "substantially justified."  Plaintiff is therefore entitled to an award of attorney's fees under EAJA.

## II.     THE FEES SOUGHT ARE REASONABLE.

Courts typically determine the amount of a reasonable fee by multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  These calculations are attached as Exhibit A to the Second Declaration of Jonathan Manes.

---

[3] The government did not cite a single case supporting the proposition that it could lawfully impose a gag order to prevent a private citizen from speaking about information already in the public domain.  Op. 30.  All of the cases it relied upon involved classified information and arose in the context of Freedom of Information Act claims, rather than First Amendment free speech rights.  Op. 30-32.

Plaintiff is entitled to recover reasonable attorneys' fees even though he has been represented by nonprofit counsel. *Blum v. Stenson*, 465 U.S. 886, 894-95 (1984). Plaintiff is also entitled to recover reasonable fees for time spent by law student interns on the litigation. *See, e.g.*, *M.C. ex rel. E.C. v. Dep't of Educ.*, No. 12-cv-9281, 2013 WL 2403485, *7-8 (S.D.N.Y. June 4, 2013); *Luciano v. Olsten Corp.*, 109 F.3d 111, 114 (2d Cir. 1997); *Missouri v. Jenkins*, 491 U.S. 274, 286 (1989) (allowing compensation for the work of paralegals and law student interns at market rates).

### A. The Number of Hours Claimed Is Reasonable.

Counsel in this case achieved a complete victory for the Plaintiff. The litigation was conducted in an expeditious and efficient manner. Indeed, the case proceeded directly from the filing of the Complaint and entry of a sealing order to cross-motions for summary judgment, which resolved the case in Plaintiff's favor. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee"; "[n]ormally this will encompass all hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435.

Plaintiff, however, is not seeking compensation for all of the hours expended in this case. In particular, Plaintiff has excluded all time spent by paralegals, much of the time spent by Clinic Director David Schulz, and all of the time spent by Clinic students who did not keep contemporaneous time records. Second Manes Decl. ¶¶ 18, 22. Moreover, Plaintiff has excluded all time that the supervising attorneys and law student interns spent on pedagogical or learning activities, including team meetings, classroom discussions, and supervision meetings. *Id.* ¶ 21. For the same reason, Plaintiff has excluded time that the law student interns spent conducting background research on procedural and legal issues that are common to most federal litigation. *Id.* This Court has previously found a law clinic's billing to be reasonable where, as here, supervisors and students excluded "instructional time." *See, e.g.*, *Moon v. Gab Kwon*, No.

99-cv-11810, 2002 WL 31512816, at *4 (S.D.N.Y. Nov. 8, 2002); *M.C. ex rel. E.C.*, 2013 WL 2403485, at *11-14.

In addition, Plaintiff's counsel has carefully reviewed all billing records to eliminate time not expended directly on the court proceedings. Second Manes Decl. ¶¶ 21, 25. Where billing entries did not sufficiently describe the nature of the work completed, the entries were deleted. *Id.* ¶ 25. As a result of all of these reductions, the resulting set of bills is entirely reasonable and is in fact modest in relation to the work actually performed.[4]

**B.     The Rates Claimed Are Reasonable.**

Plaintiff seeks compensation for his counsel's time, including that of the law student interns, at reasonable market rates. For attorneys Manes and Schulz, reasonable market rates exceed the ordinary maximum rate specified by EAJA, which stands at $195/hour for 2014 and 2015.[5] EAJA provides, however, that the maximum statutory rate may be increased in light of the "limited availability of qualified attorneys for the proceedings involved." 28 U.S.C. § 2412(d)(2)(A)(ii). The Supreme Court has interpreted this to mean that market rates may be awarded where the litigation required "attorneys having some distinctive knowledge or specialized skill needful for the litigation in question." *Pierce*, 487 U.S. at 572.

---

[4] Should the Court grant plaintiffs' request for fees, they also request compensation for the time they spend litigating this fee application. See, e.g., *Comm., I.N.S. v. Jean*, 496 U.S. 154 (1990). Rather than submit an incomplete accounting of their time at this juncture, plaintiffs will submit a complete accounting in conjunction with their reply brief.

[5] The ordinary limit on EAJA rates was set at $125/hour in 1996, to be adjusted by the Court for "an increase in the cost of living." 28 U.S.C. § 2412(d)(2)(A). Based upon Consumer Price Index data for the New York Metro region, the adjusted EAJA rate was $195/hour in both 2014 and 2015. *See* Bureau of Labor Statistics, Consumer Price Index–All Urban Consumers–New York-Northern New Jersey-Long Island, NY-NJ-CT-PA–All Items, *available at* http://data.bls.gov/cgi-bin/srgate (Series ID: CUUSA101SA0) (indicating annual CPI of 166.9 for 1996, 260.230 for 2014, and 259.967 for the first half of 2015).

This case clearly required attorneys with "distinctive knowledge" and "specialized skill" in multiple areas where few lawyers have experience: First Amendment prior restraint law; First Amendment law as it applies to surveillance gag orders; and the law regarding public access to information in the national security context. It also required "distinctive knowledge" of the National Security Letter statute, which has been amended repeatedly since the PATRIOT Act, most recently during the course of this litigation, as well as the complicated history of the use of National Security Letters by the FBI.

There are few lawyers in the country with this distinctive knowledge and specialized skill. In fact, prior to the initiation of this lawsuit, there had been only a handful of legal challenges to NSL nondisclosure orders, and in all of those cases, the Plaintiff was represented by either the American Civil Liberties Union or the Electronic Frontier Foundation. Second Merrill Decl. ¶ 7.[6] There are thus very few lawyers willing or able to represent NSL recipients in challenges to nondisclosure orders. Indeed, Plaintiff had great difficulty finding a lawyer or law firm willing to represent him in this very case, even though he had already won partial relief from the gag order in 2010 as a result of protracted litigation in which he was represented by the ACLU. *Id.* ¶¶ 5-6.

The MFIA Clinic and its supervising attorney are thus among a very small handful of organizations that possess the requisite knowledge and skill to litigate this case. Second Merrill Decl. ¶ 10. The Clinic is unique in that its practice focuses exclusively on representing clients

---

[6] *See Doe v. Gonzales*, 386 F. Supp. 2d 66 (D. Conn. 2005) (challenge by plaintiff Connecticut Library Connection, represented by ACLU); *Internet Archive v. Mukasey*, No. 07-cv-6346 (N.D. Cal. filed Dec. 14, 2007) (plaintiff represented by ACLU and EFF). The Electronic Frontier Foundation has a number of ongoing cases challenging NSL on behalf of still-unnamed NSL recipients. *See In re National Security Letter*, No. 11-cv-2667 (N.D. Cal.); *In re National Security Letter*, No. 11-cv-2173 (N.D. Cal.); *In re National Security Letter*, No. 13-mc-80089 (N.D. Cal.) (same); *In re National Security Letter*, No. 13-cv-1165 (N.D. Cal.) (same).

*pro bono* in First Amendment and information access lawsuits seeking to increase government transparency on matters of public concern in the national security and law enforcement context. Second Manes Decl. ¶ 2; Second Merrill Decl. ¶¶ 8-9.  Moreover, both of the supervising attorneys in the MFIA Clinic have focused a major part of their practices on litigating constitutional and statutory cases that challenge government secrecy on matters of public concern relating to national security and law enforcement.

In particular, since his first year practicing law, Jonathan Manes has developed specialized expertise in transparency litigation with respect national security and law enforcement programs.  Second Manes Decl. ¶¶ 7, 9-10.  Mr. Manes began his career working under the lawyers at the ACLU who represented Mr. Merrill in his first challenge to the NSL nondisclosure Order.  Second Manes Decl. ¶ 8.  From that time forward he has continuously been involved in national security transparency litigation.  *See, e.g.*, *ACLU v. Dep't of Defense*, No. 09-cv-8071 (S.D.N.Y. filed Sept. 22, 2009) (lawsuit seeking access to records regarding U.S. detention facility in Bagram, Afghanistan); *ACLU v. Dep't of Justice*, No. 10-cv-436 (D.D.C. filed Mar. 16, 2010) (lawsuit seeking access to records regarding targeted killings); *Qatanani v. Dep't of Justice*, No. 12-cv-4042 (D.N.J. filed June 29, 2012); *Qatanani v. Dep't of Homeland Security*, No. 12-cv-5379 (D.N.J. filed Aug. 24, 2012); *ACLU v. NSA*, No 13-cv-9198 (S.D.N.Y. filed Dec. 30, 2013) (seeking rules that govern surveillance of U.S. persons under Executive Order 12,333); *In re Orders Interpreting Section 215 of the PATRIOT Act*, No. Misc 13-02, 2013 WL 5460064 (Foreign Intel. Surv. Ct. 2013) (asserting qualified right of public access to important opinions of the Foreign Intelligence Surveillance Court).

In addition, Mr. Manes has extensive specialized knowledge and expertise regarding National Security Letters in particular, as well as the broader issue of secrecy regarding

surveillance programs.  Second Manes Decl. ¶ 11 (describing academic articles and *amicus* brief written on these topics.).

Mr. Manes also has significant experience litigating other First Amendment claims against law enforcement agencies.  *See, e.g.*, *See Ramos v. Flowers*, 56 A.3d 869 (N.J. App. Div. 2012) (appeal recognizing First Amendment right to videorecord on-duty police offers); *George v. Rehiel*, No. 10-cv-586 (E.D. Pa. filed Feb. 10, 2010) (challenge under First and Fourth Amendment to arrest and detention at airport predicated on possession of Arabic-language materials).  And Mr. Manes has been involved in numerous constitutional challenges to national security programs that involved difficult and complex issues of secrecy and classified evidence. *See, e.g.*, *Aulaqi v. Obama*, 727 F. Supp. 2d 1 (D.D.C. 2010) (challenge to constitutionality of planned targeted killing of U.S. citizen abroad); *Salahi v. Obama*, 710 F. Supp. 2d 1 (D.D.C. 2010) (*habeas corpus* litigation on behalf of Guantanamo detainee); *Jalatzai v. Gates*, No. 10-cv-319 (D.D.C. filed Feb. 26, 2010) (*habeas corpus* litigation on behalf of individuals detained by the United States at Bagram, Afghanistan).

Mr. Schulz's experience in these and related areas is even more extensive.  Mr. Schulz has been practicing in the area of access law and First Amendment for more than 35 years, since entering practice as a media lawyer in 1978.  Second Manes Decl. ¶¶ 13-15.  Mr. Schulz has frequently taught these subjects as an adjunct professor at Columbia Law School and Fordham Law School, and writes an annual summary of developments in the law of access for the Practicing Law Institute.  *Id.* ¶ 16.  Over the course of his career, he has litigated many cases asserting statutory and First Amendment claims for public access to information in the national security context.  Second Manes Decl. ¶ 17.  He has also advised numerous journalists and news organizations on First Amendment and other legal issues involved in gathering and publishing

news in the national security context, where public disclosure of classified or otherwise sensitive information is often at issue. *Id.*

Because both Manes and Schulz possess distinctive knowledge and specialized skill that are in scarce supply and were required to litigate this case, Plaintiff should be awarded fees for their work at market rates, rather than the ordinary EAJA maximum rate of $195. In particular, Plaintiff should be awarded fees at the rate of $345 and $355 per hour for Mr. Manes's time in 2014 and 2015, respectively, and $485 and $500 per hour for Mr. Schulz's time in those same years. These hourly rates reflect the market rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998).

The rates sought for Mr. Schulz's time reflect Mr. Schulz's discounted hourly rate, which is charged to regular clients of his Firm for similar work litigating cases involving access to information. The rates sought for Mr. Manes's work reflect the market rates charged by Mr. Schulz's firm for similar work by senior associates with Mr. Manes's level of experience. Second Manes Decl. ¶ 27. These rates are well within the range of fees previously awarded to lawyers with comparable levels of experience in civil rights cases in this district. *See, e.g.*, *Vilkhu v. City of New York*, No. 06-cv-2095, 2009 WL 1851019, at * 4 (S.D.N.Y. June 26, 2009) ("A review of precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time.") (collecting numerous cases), *vacated on other grounds*, No. 09-1178, 2010 WL 1571616 (2d Cir. Apr. 21, 2010); *LV v. N.Y. City Dep't of Educ.*, 700 F. Supp. 2d 510,518-19 (S.D.N.Y. 2010) (awarding rates up to $600/hour in a civil rights case); *Adorno v. Port Auth. of N.Y. &*

*N.J.*, 685 F. Supp. 2d 507 (S.D.N.Y. 2010) (awarding rates up to $550/hour to civil rights litigators). These rates are also consistent with market rates that the Department of Justice has endorsed for attorneys practicing in the Washington, D.C. area—known as the "Laffey Matrix"—where market rates are roughly equivalent to those in this district. Second Manes Decl. ¶¶ 28-29; *see generally Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985).

Case law and evidence of market rates also establish that $150 per hour is a reasonable rate for law student interns. Second Manes Decl. ¶ 31. The Second Circuit has affirmed that law student interns are billed at a similar rate to paralegals. *Luciano*, 109 F.3d at 114. Two years ago, Judge McMahon of this Court concluded that $125 was an appropriate hourly rate for law student interns in the Fordham Law School clinical program. *M.C. ex rel. E.C.*, 2013 WL 2403485, *7-8 (S.D.N.Y. June 4, 2013). More recently, the Court of Appeals for Veterans Claims approved an EAJA fee application submitted by a Harvard Law School clinic seeking an hourly rate of $145 for law students representing a veteran in a disability benefit appeal. *See Froio v. McDonald*, No. 12-3483, 2015 WL 3439252, at *22-23 (U.S. Ct. App. Vet. Cl. May 29, 2015); Application for Appellant at 11-12, *Froio*, No. 12-3483 (U.S. Ct. App. Vet. Cl. filed June 11, 2014). The rate sought here is also a significant discount from the market rates charged in this district for summer associates and law student clerks, even though the law student interns who represented the Plaintiff in this case have the same level of experience. Second Manes Decl. ¶ 32.

## III. PLAINTIFF IS ENTITLED TO AN AWARD OF COSTS.

This Court should also award Plaintiff the "costs incurred . . . in the litigation" against the government because he is a "prevailing party." 28 U.S.C. § 2412(a)(1); *supra* § I.A. The costs

that Plaintiff seeks here are minimal and non-controversial, consisting only of the mandatory

$350 filing fee assessed by this Court.  Second Manes Decl. ¶ 33; 28 U.S.C. § 1920.

<u>CONCLUSION</u>

      For these reasons, the Court should grant Plaintiff's motion for an award of fees and

costs.

            Respectfully submitted,

            <u>/s/Jonathan Manes</u>
            Jonathan Manes, supervising attorney
            David A. Schulz, supervising attorney
            MEDIA FREEDOM AND INFORMATION
            ACCESS CLINIC, YALE LAW SCHOOL
            P.O. Box. 208215
            New Haven, CT 06520
            Tel: (203) 432-9387
            Fax: (203) 432-3034
            jonathan.manes@yale.edu

            *Attorneys for Plaintiff Nicholas Merrill*

Dated: December 16, 2015
      New Haven, CT